Karin BUSTER, Plaintiff,

v.

CITY OF WALLINGFORD and Wendy Kudzma, Defendants.

Civil No. 3:07cv544(JBA).

United States District Court, D. Connecticut.

May 30, 2008.

See also 490 F.Supp.2d 293.

Marc L. Glenn, W. Martyn Philpot, Jr., Law Offices of W. Martyn Philpot, Jr., LLC, New Haven, CT, for Plaintiff.

David S. Monastersky, Martha Anne Shaw, Howd & Ludorf, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JANET BOND ARTERTON, District Judge.

Plaintiff Karin Buster initiated this action in Connecticut Superior Court concerning allegedly discriminatory treatment of her at her place of employment with the Town of Wallingford ("Town"),[1] claiming violations of the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a-60 ("CFEPA"), and 42 U.S.C. § 1983, and further alleging intentional and negligent infliction of emotional distress. The Court previously denied Plaintiff's Motion to Remand on June 11, 2007, finding the case properly removed. 490 F.Supp.2d 293, 295 (D.Conn.2007). Defendants now seek summary judgment on all claims, and have also moved to strike five

---

1. Although named in the caption as a "City," the municipality is incorporated as "The Town of Wallingford," which is how the Court will refer to it here. Charter of the Town of Wallingford, Ch. 1, § 1 (amended Nov. 7, 1989).

## I. Factual Background

Viewing the record in the light most favorable to the Plaintiff as the nonmoving party, the relevant facts are as follows. Karin Buster began working for the Town in 1994, first as a clerk typist and later as a risk management secretary. Shortly after being hired, Buster was in the mail room when she overheard a conversation between Wendy Kudzma, an assistant sanitarian, and Millie Wood, a mail clerk. Kudzma allegedly asked Wood, "Who's the nigger?" Wood responded: "She works in risk management[;] we have three of them now." Buster did not mention this conversation to any other employee until 1997, when she raised it in a conversation about race relations with a former supervisor, Mark Wilson, who said he would report Kudzma's remark to personnel director Terry Sullivan. On another occasion a few years later, Buster was at an office holiday party when a coworker, John Sherman, observed: "I see you have chicken on your plate. Why don't you go see if there's watermelon?"

On March 15, 2005, Buster and some other employees were joking about how she had gained weight, and a female co-worker noted that Buster looked "chunky." The initially good-natured conversation continued the next day, when Kudzma asked Buster whether she was coming to the St. Patrick's Day office party. Buster replied that she was not, due to her distaste for cabbage and corned beef. A male co-worker joked about how Buster must be watching her weight, and everyone laughed. After a few others explained how Buster had been called "chunky" the day before, Kudzma said that they all could call Buster a "chunky monkey now." Although Kudzma maintains that this comment carried no racial meaning and that she was simply repeating a reference to the Ben & Jerry's ice cream flavor which her colleagues and children often used, Buster construed the remark as racially charged and was offended by it. She later confronted Kudzma and received an apology from her. Kudzma then related the incident to Buster's supervisors, who spoke with Buster. Even though she told them that she was "okay with everything" and that she "wanted to let it go," Buster filed a formal complaint. Sullivan investigated the incident and interviewed several other employees, but found no evidence that Kudzma's comment was racially motivated, notwithstanding Kudzma's history of other negative comments and conduct in the workplace. Although the Town did not discipline Kudzma, her supervisor directed her to no longer go to the floor where Buster's office was located unless her work required it.

Buster filed her six-count complaint in state superior court on March 13, 2007. She sought treatment for stress and anxiety in July 2007 and later resigned from her employment with the Town in November 2007. The parties agree that her resignation is not relevant to the issues in the case.

## II. Count One: CFEPA Claims[2]

### A. Disparate Treatment

 Although Buster has alleged violations of CFEPA only, not Title VII, her disparate treatment discrimination claim is analyzed under the familiar *McDonnell*

---

2. The well-known summary judgment standard is familiar to the Court and will be applied without recitation in detail. *See, e.g.,* *Milardo v. City of Middletown*, 528 F.Supp.2d 41, 44–45 (D.Conn.2007).

*Douglas* burden-shifting framework used for Title VII claims. *See Craine v. Trinity College,* 259 Conn. 625, 791 A.2d 518, 531 n. 6 (2002). To establish a prima facie case of racial discrimination, Buster must prove: (1) membership in a protected class; (2) qualification for her position; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination on the basis of her membership in the protected class. *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). For the third element, a plaintiff must have "endure[d] a materially adverse change in the terms and conditions of employment," which "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (quotation marks omitted). This requirement stems from the effort to "protect [ ] individuals from actions injurious to *current* employment or the ability to secure *future* employment." *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997).

■ Defendants argue that Buster has not made out her prima facie case because, among other reasons, she suffered no adverse employment action. Plaintiff contends that she has sustained her prima facie burden, citing the three racially derogatory comments she endured over more than a decade during a time when there were few minority employees. Buster concedes that she "may not have sustained financial hardship as evidenced by a reduction in pay and/or benefits or a diminished reputation concerning her capaci-

ty as evidenced by a reduction in job responsibilities or a less distinguished title," but maintains that there was nevertheless an adverse employment action because "the conduct she alleges against [the Defendants] took an emotional toll as evidenced by her development of stress and anxiety, as well as subsequent treatment." (Pl.'s Mem. Opp'n at 6.)

This is Plaintiff's only explanation for how she can meet the adverse-action element of her prima facie case. Whether or not the "chunky monkey" comment from 2005 was racially derogatory, as arguably inferable from the overtly racial content of Kudzma's untimely 1994 query in the mail room, this remark and its effects did not constitute a "materially adverse change in the terms and conditions of [her] employment." *Galabya,* 202 F.3d at 640; *see also Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 57–58 (2d Cir.2004) (concluding that plaintiff did not suffer an adverse employment action on the basis of being called back early from vacation, experiencing reduced working hours, and being disciplined for lateness); *Galabya,* 202 F.3d at 640 (finding a teacher's delay in reassignment, misassignment to another school, and eventual transfer not adverse actions); *Wanamaker,* 108 F.3d at 466 (holding that plaintiff's "loss of a phone and office [was not] sufficiently deleterious to constitute adverse employment action"). Kudzma had no supervisory authority over Buster. The Town conducted an investigation into the incident (which Plaintiff challenges as inadequate and flawed) and ultimately ordered Kudzma to stay clear of Buster's area of the office unless required by her work responsibilities. Absent any adverse employment action, Buster has failed to establish a prima facie case of disparate treatment on account of her race.

## B. Hostile Work Environment

 Buster's hostile-work-environment claim suffers the same fate, but for a different reason. "An employee plaintiff ... may state a claim of discriminatory harassment based upon a hostile work environment by alleging (1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995) (quotation marks and citations omitted). Where alleged harassment is "attributable to a co-worker, not a supervisor" (as Kudzma indisputably is), a plaintiff must show that her employer "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996); *see also Petrosino v. Bell Atlantic*, 385 F.3d 210, 225 (2d Cir.2004) ("[A]n employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.")

In light of these standards, the record demonstrates that no reasonable jury could conclude that the conduct at issue could be imputed to Buster's employer. Whether or not the "chunky monkey" co-worker comment could be sufficiently egregious to create a racially hostile work environment need not be decided since Buster's complaint about it was immediately investigated by Sullivan. Plaintiff contends that this investigation was an inadequate remedy because of its outcome, which she posits reflected bias or insensitivity. However, her evidence of the dearth of other black employees provides no proof from which it can be inferred that the Town's response to Kudzma's comment and Buster's complaint was knowingly or discriminatorily inadequate. That a complaint procedure was available and that investigatory steps were taken are undisputed, and Buster offers no factual or legal support why Kudzma's comment could be imputed to her employer. Thus, her hostile-work-environment claim necessarily fails.

Consequently, summary judgment is granted as to Plaintiff's disparate-treatment and hostile-work-environment claims in count one.

## III. Counts Two and Three: § 1983 Claims

Plaintiff alleges in counts two and three of her complaint that both the Town and Kudzma violated her constitutionally protected right to equal protection of the laws, in violation of 42 U.S.C. § 1983.

### A. The Town

 Section 1983 does not permit municipal liability to be imposed on the basis of respondeat superior—i.e., solely because it employs a tortfeasor—but a town may be held liable "if the conduct that caused the [alleged] unconstitutional deprivation was undertaken pursuant to a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers ... or pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir.2000) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). There can be no municipal liability "unless the injury was inflicted by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.*

Plaintiff "need not identify an express rule or regulation," but must "show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir.2004).

 The record is devoid of any evidence that could support the conclusion that the Town had a policy or custom of condoning racial harassment on the basis of which *Monell* liability could be imposed. Buster's evidence of such a policy is limited to (1) Kudzma's "chunky monkey" remark, (2) Kudzma's apparently known "penchant for inappropriate remarks" and "reputation for offensive conduct" (Pl.'s Mem. Opp'n at 10–11), (3) Buster's view that the Town failed to properly address Kudzma's racially derogatory and inappropriate workplace behavior (although conceding that Sullivan was not a final decision-maker), and (4) the Town's few other black employees. Even accepting her characterization of the record, no reasonable fact-finder could conclude that this demonstrates a policy of, or acquiescence to, racial discrimination and/or harassment in the workplace.

**B. Wendy Kudzma**

 As the Second Circuit has explained, when a § 1983 equal-protection claim is brought alongside an employment-discrimination claim, "[t]he elements of one are generally the same as the elements of the other and the two must stand or fall together." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir.2004); *see also Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir.1996) ("[W]hen § 1983 is used as a parallel remedy with Title VII in a dis-

crimination suit . . . the elements of the substantive cause of action are the same under both statutes.").

 Given that Buster's CFEPA claims of disparate treatment and hostile work environment failed as discussed above, so, too, they must necessarily fail when recast as violations of § 1983—i.e., the record shows neither that Plaintiff suffered an adverse employment action nor that Kudzma's conduct can be imputed to the Town.

Thus, summary judgment is granted on Plaintiff's § 1983 claims in counts two and three.

**IV. State–Law Claims**

In the remaining three counts of her complaint, Buster alleges intentional infliction of emotional distress against the Town (count four) and Kudzma (count five) and negligent infliction of emotional distress against Kudzma (count six).

**A. Counts Four and Five**

 To sustain an intentional-infliction claim under Connecticut law, a plaintiff must show that (1) the defendant intended to cause emotional harm, or knew or should have known that such harm was likely to result, (2) the defendant's misconduct was "extreme and outrageous," (3) such conduct caused the plaintiff's harm, and (4) the plaintiff's emotional harm was "severe." *Petyan v. Ellis*, 200 Conn. 243, 510 A.2d 1337, 1342 (1986). Put another way, liability can be imposed only for "conduct [which] exceed[s] all bounds usually tolerated by decent society," that is, "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 597 A.2d 807, 828 (1991) (quotation marks omitted). This standard for offensive conduct does

not include, for example, "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings." *Miner v. Town of Cheshire*, 126 F.Supp.2d 184, 195 (D.Conn.2000) (collecting cases).

■■■ Pursuant to Connecticut General Statutes § 52–557n(a)(2)(A), however, municipal entities are immune from liability for intentional torts. *Pane v. City of Danbury*, 267 Conn. 669, 841 A.2d 684, 685–86 (2004). Therefore, as Plaintiff's counsel conceded during oral argument, summary judgment must be granted on the intentional-infliction claim against the Town in count four.

■■■ Plaintiff's intentional-infliction claim against Kudzma in count five also fails, but for a different reason. As explained above, a plaintiff claiming intentional infliction of emotional distress must demonstrate that she suffered extreme emotional distress due to the defendant's conduct, meaning "so severe that no reasonable [person] could be expected to endure it." Restatement (Second) of Torts § 46 cmt. j (1965); *see, e.g.*, *DeLaurentis*, 597 A.2d at 828 (following the Restatement). Buster admitted during her deposition that her emotional distress was caused not by Kudzma, but rather by the Town's inadequate response:

Q: Now, you allege that you've suffered emotional distress as a result of the incident that took place in March of 2005.

A: Yes.

Q: When did you begin to suffer this emotional distress?

A: The day I met with Terry [Sullivan] and he completely switched everything around and told me that he wasn't—there was nothing he was going to do to Wendy and basically tried to put the whole thing back on me and tell me it was my fault for not saying anything about the "N" word remark.

Q: So the emotional distress started when Terry told you there was nothing going to be done about it?

A: Exactly.

(Pl.'s Dep., Sept. 19, 2007, 66:10–24.) Buster admitted that her emotional distress was caused by the Town, not Kudzma, and after Kudzma apologized for the comment, Buster said she wanted to let it go. Plaintiff offers no evidence of severe emotional distress she experienced as a consequence of Kudzma's "chunky monkey" quip. The record would permit a jury to conclude that Kudzma made the remark with a racial connotation in mind and that she generally said inappropriate and offensive things around the Town offices, but an intentional-infliction claim requires more. Because Buster lacks sufficient evidence that Kudzma's remark caused her severe emotional distress, summary judgment must be granted on this claim as well.

## B. Count Six

■■■ Buster's final claim alleges negligent infliction of emotional distress against Kudzma. In the employment context, a negligent-infliction claim "arises only where it is based upon unreasonable conduct of the defendant in the termination process," and a plaintiff must demonstrate "that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." *Parsons v. United Techs. Corp.*, 243 Conn. 66, 700 A.2d 655, 667 (1997). Moreover, "an individual municipal employee may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment con-

text, distinguished from conduct occurring in the termination of employment." *Perodeau v. City of Hartford,* 259 Conn. 729, 792 A.2d 752, 762–63 (2002).

During oral argument, Plaintiff's counsel acknowledged that Buster resigned from her employment with the Town in November 2007 after the events giving rise to the negligent-infliction claim occurred. Thus, Kudzma's remark could not have been in the context of a termination of employment, and this claim is not viable. Summary judgment is appropriately granted.

### V. Conclusion

Accordingly, Defendants' Motion for Summary Judgment [Doc. # 30] is granted. Because all issues raised in Defendants' Motion to Strike [Doc. # 35] were covered in the parties' summary-judgment briefing, it is denied as duplicative and moot. The Clerk is directed to close this case.

IT IS SO ORDERED.