******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

THERESA D. S. HEYWARD ET AL. *v.* JUDICIAL
DEPARTMENT OF THE STATE
OF CONNECTICUT ET AL.
(AC 39232)

DiPentima, C. J., and Keller and Pellegrino, Js.

*Syllabus*

The plaintiff T, a clerk in a state courthouse, sought to recover damages from
her employer, the defendant Judicial Department, and her supervisor,
the defendant A, for their alleged employment discrimination in violation
of the applicable provision (§ 46a-60 [a]) of the Connecticut Fair Employ-
ment Practices Act. In an amended complaint, T claimed, inter alia,
that the defendants had created a hostile work environment and had
discriminated against her on the basis of her race. The trial court dis-
missed all counts of the complaint as against A and all but the hostile
work environment and race discrimination counts as against the state,
and T appealed to this court, which dismissed the appeal in part and
affirmed the judgment in part. Thereafter, the trial court granted the
state's motion to strike the remaining two counts of the complaint,
concluding, inter alia, that the complaint failed to allege sufficient facts
to support her claims of hostile work environment and race discrimina-
tion. On T's appeal to this court, *held*:

1. The trial court properly struck T's hostile work environment claim; the
   conduct alleged by T in her complaint was not sufficiently severe or
   pervasive so as to alter the conditions of her employment and to create
   a hostile work environment, as T alleged only two instances of racial
   remarks, with one of those remarks having been made toward a third
   person, and two instances of inappropriate conduct alleged to have
   occurred within a one year span did not meet the high standard of
   severe and pervasive, and the remainder of T's allegations concerned
   routine workplace matters, such as requests for time off, lunch breaks,
   performance evaluations and favoritism, which were not unreasonable
   conditions to be subjected to in the employment context.

2. The trial court properly struck T's claim of race discrimination, T having
   pleaded insufficient facts to establish a prima facie case of discrimina-
   tion; T did not allege any facts demonstrating that she had been subjected
   to an adverse employment action by her employer, as her allegations
   that A had placed a disciplinary e-mail in her personnel file and had
   yelled at her in front of coworkers and members of the public for having
   given incorrect information did not constitute an adverse employment
   action in the absence of evidence showing that T had been terminated,
   demoted or given diminished responsibilities, or that she suffered a
   decrease in salary or material loss in benefits.

Argued October 10—officially released December 19, 2017

*Procedural History*

Action to recover damages for, inter alia, alleged
employment discrimination, and for other relief,
brought to the Superior Court in the judicial district of
Waterbury, where the court, *Zemetis, J.*, granted in part
the defendants' motion to dismiss, rendered judgment
thereon, and transferred the matter to the judicial dis-
trict of Hartford; thereafter, the plaintiffs appealed to
this court, which dismissed the appeal in part and
affirmed the judgment in part; subsequently, the court,
*Noble, J.*, granted the named defendant's motion to
strike, and the plaintiffs appealed to this court; there-
after, the court, *Noble, J.*, granted the named defen-
dant's motion for judgment and rendered judgment
thereon, and the plaintiffs filed an amended appeal.

*Affirmed.*

*Eddie Z. Zyko*, for the appellants (plaintiffs).

*Ann E. Lynch*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (named defendant).

*Opinion*

PELLEGRINO, J. In this action arising out of alleged workplace discrimination, the plaintiff Theresa D. S. Heyward appeals from the judgment of the trial court rendered in favor of the defendant Judicial Department of the state of Connecticut.[1] On appeal, the plaintiff claims that the court erred in granting the defendant's motion to strike her hostile work environment and racial discrimination claims. We disagree and, accordingly, affirm the judgment of the trial court.

In *Heyward* v. *Judicial Department*, 159 Conn. App. 794, 797–98, 124 A.3d 920 (2015), this court set forth the following undisputed facts and procedural history: "[The plaintiff], who is African-American, was employed as an administrative clerk in the clerk's office for the Superior Court in Meriden. At all relevant times, she was the only nonwhite employee working in the Meriden clerk's office.

"On July 18, 2012, [the plaintiff] filed a complaint with the Commission on Human Rights and Opportunities (CHRO), alleging that she had been subjected to harassment, discrimination and denied time off for medical appointments due to her race and gender, and as retaliation for engaging in protected activities. In her CHRO complaint, [the plaintiff] named the [defendant] as the sole respondent. She alleged that her supervisor, [Robert A.] Axelrod, had subjected her to a hostile work environment on the basis of her sex and race . . . .

"On March 7, 2013, [the plaintiff] received a release of jurisdiction letter from the CHRO, authorizing her to bring an action in the Superior Court for the claims alleged in her CHRO complaint. On August 8, 2013, [the plaintiff and her husband][2] filed a six count amended complaint [in the Superior Court] against the [defendant and Axelrod]. The first five counts were brought by [the plaintiff] against [the defendant and Axelrod], and alleged, respectively, creation of a hostile work environment, race based discrimination, disability discrimination, negligent infliction of emotional distress, and defamation. . . .

"The [defendant] moved to dismiss the amended complaint on August 14, 2013, arguing that the court lacked subject matter jurisdiction to hear the case for a number of reasons. With respect to the [defendant], the court granted the motion to dismiss . . . [as to] counts [three] four, five, and six . . . ." (Footnotes added and omitted.)

On February 21, 2014, the plaintiff appealed from the court's dismissal of the latter four counts of her amended complaint. On September 15, 2015, this court dismissed the appeal as to the defendant for lack of subject matter jurisdiction, concluding that the plaintiff had not appealed from a final judgment. See id., 805. While that appeal was pending, the defendant moved

to strike the remaining two counts of the plaintiff's amended complaint, alleging hostile work environment and race discrimination. On December 10, 2015, the plaintiff filed her memorandum in opposition to the defendant's motion to strike. On April 12, 2016, the court issued a memorandum of decision granting the defendant's motion to strike on the ground that the plaintiff's amended complaint did not allege sufficient facts to support claims of hostile work environment or race discrimination, and, in the alternative, that the plaintiff's memorandum in opposition was inadequately briefed.[3] This appeal followed.[4] Additional facts will be set forth as necessary.

The plaintiff claims that the court improperly struck her hostile work environment and race discrimination claims and contends that she is "entitled to the broadest construction of the allegations of the amended complaint without [formulaic words] being required." We disagree and conclude that the plaintiff has pleaded insufficient facts to state a claim of hostile work environment or race discrimination.

We first set forth the appropriate standard of review in an appeal from the granting of a motion to strike. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling . . . is plenary." (Internal quotation marks omitted.) *Amato* v. *Hearst Corp.*, 149 Conn. App. 774, 777, 89 A.3d 977 (2014). "The role of the trial court [is] to examine the [complaint], construed in favor of the [plaintiff], to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) *Szczapa* v. *United Parcel Service, Inc.*, 56 Conn. App. 325, 328, 743 A.2d 622, cert. denied, 252 Conn. 951, 748 A.2d 299 (2000). "It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . For the purpose of ruling upon a motion to strike, the facts alleged in a complaint, though not the legal conclusions it may contain, are deemed to be admitted. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Internal quotation marks omitted.) *Amato* v. *Hearst Corp.*, supra, 777–78.

The following additional facts are necessary for our discussion. Our decision in the plaintiff's prior appeal summarizes the well-pleaded facts set forth in paragraphs nine and ten of the amended complaint as follows: "Axelrod allegedly told an African-American police officer that he 'must be working hard' because he was 'black.' Margaret Malia, [the plaintiff's] coworker, allegedly stated that she 'did not believe in interracial relationships . . . .' [The plaintiff] was also denied

vacation time and medical leave because of 'operational need,' even though Axelrod routinely granted other employees requests for time off. Axelrod yelled at [the plaintiff] in front of coworkers and members of the public, and interrupted [the plaintiff's] conversations, both during work and while she was on breaks, to discuss work-related matters. [The plaintiff] felt that Axelrod showed Malia 'preferential treatment' at her expense. Axelrod placed a 'defamatory, accusatory and baseless' e-mail in [the plaintiff's] personnel file. [The plaintiff] believed that the state did not do enough to protect her from the favoritism that Axelrod showed other employees." *Heyward* v. *Judicial Department*, supra, 159 Conn. App. 798 n.3.

In granting the defendant's motion to strike, the court stated: "[The plaintiff] has not asserted in her objection that in fact the conduct alleged in her complaint created a workplace 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.' *Brittel* v. *Dept. of Correction*, [247 Conn. 148, 166–67, 717 A.2d 1254 (1998)]. The court does not find that such has been alleged. Similarly, the plaintiff has not objected to the defendant's motion to strike on the ground that her complaint in fact alleges an adverse employment action as a consequence of the state's conduct as is required to state a claim for [race] discrimination. *Buster* v. *Wallingford*, [557 F. Supp. 2d 294 (D. Conn. 2008)]. A review of the complaint indicates no such pleading."

With these factual allegations and legal principles in mind, we address the sufficiency of the plaintiff's pleadings with respect to her hostile work environment and race discrimination claims.

I

We first address the plaintiff's hostile work environment claim. The plaintiff, in count one of her amended complaint, alleges the following: "The conduct of the [defendant and Axelrod] created a hostile work environment for [the plaintiff] in violation of the Connecticut Fair Employment Practices Act, [General Statutes § 46a-51 et seq.] insofar as the conduct was sufficiently severe and pervasive so as to alter the terms and conditions of her employment and . . . Axelrod's conduct was egregiously not in compliance with the pertinent law/regulations/policies he was charged with abiding by/enforcing that the defendant . . . did not, or improperly so, train him to do/oversee him." The plaintiff contends that the court improperly struck this count because she pleaded in accordance with *Brittel* v. *Dept. of Correction*, supra, 247 Conn. 166–67. We disagree and conclude that the facts alleged by the plaintiff are not sufficiently severe or pervasive so as to alter the conditions of her employment and to create a hostile

work environment.

We begin by setting forth the applicable legal framework. General Statutes § 46a-60 (a) (1) provides in relevant part: "It shall be a discriminatory practice . . . [f]or an employer, by the employer or the employer's agent . . . to discriminate against such individual in compensation or terms, conditions or privileges of employment because of the individual's race . . . ." In order for the plaintiff "[t]o establish a claim of hostile work environment, [under § 46a-60 (a) (1)] the workplace [must be] permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment . . . . In order to be actionable . . . [the working] environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the [plaintiff] in fact did perceive to be so. . . . [W]hether an environment is sufficiently hostile or abusive [is determined] by looking at all the circumstances . . . ." (Citations omitted; internal quotation marks omitted.) *Brittell* v. *Dept. of Correction*, supra, 247 Conn. 166–67; see also *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 699, 41 A.3d 1013 (2012). "[T]here must be more than a few isolated incidents of racial enmity . . . meaning that [i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments . . . . Thus, whether racial slurs constitute a hostile work environment typically depends on the quantity, frequency, and severity of those slurs . . . considered cumulatively in order to obtain a realistic view of the work environment . . . ." (Internal quotation marks omitted.) *Feliciano* v. *Autozone, Inc.*, 316 Conn. 65, 85, 111 A.3d 453 (2015).

In the present case, the plaintiff alleged only two instances of racial remarks, with one of those remarks being made toward a third person. "Although not bound by it, we review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes." (Internal quotation marks omitted.) *Thomson* v. *Dept. of Social Services*, 176 Conn. App. 122, 131, 169 A.3d 256, cert. denied, 327 Conn. 962, A.3d (2017). The United States Supreme Court has held that the "mere utterance of an . . . epithet which endangers offensive feelings in an employee . . . does not sufficiently affect the conditions of employment to implicate Title VII [of the Civil Rights Act of 1964]." (Citation omitted; internal quotation marks omitted.) *Harris* v. *Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). Furthermore, two instances of inappropriate conduct within a one year span do not meet the high standard of severe and pervasive. See, e.g., *Quinn* v. *Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (holding that two isolated incidents of inappropriate sexual conduct not sufficient to establish liability for hostile work

environment); *Stembridge* v. *New York*, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (holding that seven instances over three year span, which included indirect racial remarks, direct racial slurs, and hanging of black doll near plaintiff's workstation, were insufficient to support finding of hostile work environment); *Carter* v. *Cornell University*, 976 F. Supp. 224, 232 (holding that six racial remarks over three years did not constitute hostile work environment), aff'd, 159 F.3d 1345 (2d Cir. 1998). Additionally, the remainder of the plaintiff's allegations concern routine workplace matters, such as requests for time off, lunch breaks, performance evaluations and favoritism. These are not unreasonable conditions to be subjected to in the employment context. See *Perodeau* v. *Hartford*, 259 Conn. 729, 757, 792 A.2d 752 (2000) ("individuals reasonably should expect to be subject to other vicissitudes of employment, such as workplace gossip, rivalry, personality conflicts and the like"). We therefore conclude that the conduct alleged by the plaintiff is not sufficiently severe or pervasive to establish a claim of hostile work environment, and, accordingly, the trial court properly struck the plaintiff's hostile work environment claim.

## II

We next address the sufficiency of the plaintiff's race discrimination claim. The plaintiff, in count two of her amended complaint, alleges the following: "The conduct of the defendants was race discrimination against [the plaintiff] in violation of the Connecticut Fair Employment Practices Act and . . . Axelrod's conduct was egregiously not in compliance with the pertinent law/regulations/policies he was charged with abiding by/enforcing that the defendant . . . did not, or improperly so, train him to do/oversee him." The plaintiff contends that this language, when read in conjunction with paragraphs nine and ten, "manifestly means that an adverse employment action . . . has been alleged . . . ." We disagree and conclude that the plaintiff did not allege any facts demonstrating that she was subjected to an adverse employment action by the defendant.

The following legal principles guide our analysis of the plaintiff's discrimination claim. "The [legal] framework this court employs in assessing disparate treatment discrimination claims under Connecticut law was adapted from the United States Supreme Court's decision in *McDonnell Douglass Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny."[5] (Internal quotation marks omitted.) *Tomick* v. *United Parcel Services, Inc.*, 157 Conn. App. 312, 325, 115 A.3d 1143 (2015), aff'd, 324 Conn. 470, 153 A.3d 615 (2016). Accordingly, under our state law, in order for the plaintiff to prevail on her claim of race discrimination based on disparate treatment, she must first establish a prima facie case of discrimination. "To

establish a prima facie case of discrimination . . . the [plaintiff] must demonstrate that (1) [she] is in a protected class; (2) [she] was qualified for the position; (3) [*she*] *suffered an adverse employment action*; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination." (Emphasis added; internal quotation marks omitted.) *Jones* v. *Dept. of Children & Families*, 172 Conn. App. 14, 25, 158 A.3d 356 (2017). "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. . . . To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. . . . [A]n adverse employment action [has been defined] as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." (Citation omitted; internal quotation marks omitted.) *Amato* v. *Hearst Corp.*, supra, 149 Conn. App. 781; id., 783 (holding that employee failed to allege adverse employment action as result of being placed on performance improvement plan because she did not additionally allege that her salary or benefits had decreased, or that there was change in employment status).

In the present case, the plaintiff alleges that Axelrod placed a disciplinary e-mail in her personnel file and also yelled at her in front of coworkers and members of the public for giving incorrect information. Federal courts, however, have held that a disciplinary letter does not constitute a materially adverse employment action.[6] See, e.g., *Chang* v. *Safe Horizons*, 254 Fed. Appx. 838, 839 (2d Cir. 2007) (holding that oral and written warnings do not constitute adverse employment actions); *Joseph* v. *Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("[t]he application of the [employer's] disciplinary policies to [the employee], without more, does not constitute [an] adverse employment action"); *Mattern* v. *Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) (holding that disciplinary filings and supervisor's reprimands are not adverse employment actions), cert. denied, 522 U.S. 932, 118 S. Ct. 336, 139 L. Ed. 2d 260 (1997).

The reprimands and admonishments alleged by the plaintiff, in the absence of evidence showing that she was terminated, demoted or given diminished responsibilities, or that she suffered a decrease in salary or material loss in benefits, do not constitute an adverse employment action. We therefore conclude that the trial court properly struck the plaintiff's race discrimination claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On August 8, 2013, Theresa Heyward and her husband, the plaintiff Kevin

Heyward, filed a six count amended complaint against the defendants, the Judicial Department of the state of Connecticut (state) and Robert A. Axelrod, the chief clerk for the judicial district of New Haven at Meriden. The first five counts were brought by Theresa Heyward against the defendants, and Kevin Heyward alleged a derivative cause of action for loss of consortium in count six. Thereafter, the defendants filed a motion to dismiss the complaint. On February 4, 2014, the trial court dismissed all counts as to Axelrod, and counts three through six as to the state. On appeal, this court dismissed the appeal as to the state for lack of subject matter jurisdiction and affirmed the judgment as to Axelrod. See *Heyward* v. *Judicial Department*, 159 Conn. App. 794, 805, 124 A.3d 920 (2015). Consequently, Axelrod is not a party to this appeal, and, therefore, all references in this opinion to the defendant are to the state. Furthermore, although initially raised in their preliminary statement of the issues, the plaintiffs have not briefed any claimed error regarding the trial court's February 4, 2014 ruling on the motion to dismiss. Therefore, the sole issue on appeal is whether the trial court properly granted the state's motion to strike the first and second counts of the amended complaint. Accordingly, Kevin Heyward is not involved in this appeal, and, therefore, all references in this opinion to the plaintiff are to Theresa Heyward.

[2] See footnote 1 of this opinion.

[3] Because we conclude that the plaintiff's amended complaint was legally insufficient and this is an adequate basis on which to affirm the judgment of the trial court, we need not address the court's alternative basis for granting the defendant's motion to strike.

[4] On May 19, 2016, the plaintiff filed her appeal. On May 25, 2016, the defendant filed a motion for judgment. On June 6, 2016, the court granted the defendant's motion and rendered judgment in the defendant's favor. On June 16, 2016, the plaintiff amended her appeal to include the final judgment rendered on the stricken counts, effectively curing the jurisdictional defect. See Practice Book § 61-9 ("[i]f the original appeal is dismissed for lack of jurisdiction, the amended appeal shall remain pending if it was filed from a judgment or order from which an original appeal properly could have been filed").

[5] "[D]isparate treatment simply refers to those cases where certain individuals are treated differently than others. . . . The principal inquiry of a disparate treatment case is whether the plaintiff was subjected to different treatment because of his or her protected status." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 104, 671 A.2d 349 (1996).

[6] A review of our case law does not provide any controlling authority. We therefore turn to federal precedent for guidance in reaching our conclusion. See *Thomson* v. *Dept. of Social Services*, supra, 176 Conn. App. 131.