******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# GLORIA FERNANDEZ *v.* MAC MOTORS, INC.
## (AC 43618)

Bright, C. J., and Alvord and Devlin, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant, her former employer, for alleged discrimination and the creation of a hostile work environment on the basis of her gender in violation of the applicable provision (§ 46a-60) of the Connecticut Fair Employment Practices Act. The plaintiff, who had been a finance manager at the defendant's car dealership, claimed that she had been paid less than male employees who performed the same job and that she had been subjected to mistreatment by four male managers, which included sporadic incidents of yelling. She further alleged that male employees made remarks in the workplace that were crude and demeaning to women. The plaintiff initially brought an action in the United States District Court for the District of Connecticut, in which she alleged that the defendant had violated the federal Equal Pay Act of 1963 (29 U.S.C. § 206 et seq.). While the federal action was pending, the plaintiff filed a complaint with the Commission on Human Rights and Opportunities, in which she alleged violations of § 46a-60. The commission thereafter issued to the plaintiff a release of jurisdiction letter that authorized her to bring this action in the Superior Court. During the pendency of that action, the District Court rendered summary judgment for the defendant. The trial court then granted the defendant's motion for summary judgment on the grounds that the plaintiff's gender discrimination claim was barred by the doctrine of res judicata and that the evidence she presented was insufficient to raise a genuine issue of material fact as to her hostile work environment claim. On the plaintiff's appeal to this court, *held*:

1. The trial court correctly determined that res judicata barred the plaintiff's gender discrimination claim: contrary to the plaintiff's assertion that the statute of limitations for Equal Pay Act claims required her to litigate that claim before her gender discrimination claim, there was no genuine issue of material fact that she was not jurisdictionally barred from bringing the gender discrimination claim in the District Court, as she failed to take advantage of available options that included filing the Equal Pay Act claim in the District Court, then seeking a stay of that action until the proceeding before the commission concluded, amending the Equal Pay Act complaint to add the gender discrimination claim after the commission issued the release of jurisdiction letter, or exhausting her administrative remedies before the commission, then filing both the Equal Pay Act and gender discrimination claims in the District Court; moreover, as the complaint before the trial court and the pleadings in the District Court contained virtually identical allegations, and involved the same parties and conduct that occurred during the same time period, the combined facts of both actions constituted a single transaction that would have formed a convenient trial unit for the District Court, which would not have been unexpected by the parties; furthermore, the plaintiff failed to present any evidence to suggest that the District Court would have declined to exercise supplemental jurisdiction over her gender discrimination claim, as federal courts routinely, and properly, exercise supplemental jurisdiction over state law claims of that nature when similar federal claims also have been alleged, and, although the plaintiff's Equal Pay Act and state law discrimination claims contained different legal elements, such differences do not affect the application of res judicata when the legal claims arise from the same transaction.

2. The trial court correctly determined that the defendant was entitled to judgment as a matter of law on the plaintiff's hostile work environment claim: the conduct at issue was not sufficiently severe or pervasive to give rise to a hostile work environment claim, as the plaintiff admitted that the incidents and conduct at issue were sporadic and not pervasive, she was unable to describe with specificity when the events occurred, and she never alleged, and the record did not suggest, that the conduct at issue altered the conditions of her employment; moreover, nothing

in the record suggested that yelling, the only conduct clearly directed at the plaintiff, ever had anything to do with her gender, and the plaintiff stated that the yelling was always related to issues in the workplace; furthermore, there was no evidence as to when the comments and conduct directed at other female employees occurred or that the plaintiff ever took steps to report it, and she specifically stated that she was never the target of language or conduct of a sexual nature.

Argued April 14—officially released July 13, 2021

*Procedural History*

Action to recover damages for alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Hon. A. Susan Peck*, judge trial referee, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed*.

*Zachary T. Gain*, with whom, on the brief, was *James V. Sabatini*, for the appellant (plaintiff).

*Sara R. Simeonidis*, with whom, on the brief, was *James F. Shea*, for the appellee (defendant).

*Opinion*

DEVLIN, J. In this employment discrimination case, the plaintiff, Gloria Fernandez,[1] appeals from the summary judgment rendered in favor of her former employer, the defendant, Mac Motors, Inc., as to both counts of her complaint, in which she alleged that the defendant had subjected her to discrimination and a hostile work environment on the basis of her gender. On appeal, the plaintiff claims that the trial court erred in granting the defendant's motion for summary judgment in its entirety because (1) her gender discrimination claim was not barred by the doctrine of res judicata, and (2) she submitted sufficient evidence to raise a genuine issue of material fact as to her hostile work environment claim. We affirm the judgment of the court.

The record before the court, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following facts and procedural history. The defendant is a corporation that does business as Hartford Toyota Superstore and operates a car dealership in Hartford. On August 1, 2014, the defendant hired the plaintiff as a finance manager. The defendant employed one other finance manager, Marc Clemons, who is male. Among the responsibilities of finance managers was the sale of "back end" financial products[2] to customers who purchased vehicles. When the plaintiff was hired, finance managers received as compensation 14 percent of the gross profits from their own sales of back end products to customers.

During the time of the plaintiff's employment with the defendant, Asad "Tony" Mumtaz served as finance director, and he was responsible for overseeing the finance managers and working with financial institutions to obtain financing for customers. James Webster served as general manager, and he was responsible for overseeing Mumtaz and managing the day-to-day business of the defendant. Webster reported directly to the defendant's owner, Richard McAllister, whose son, Richard McAllister, Jr. (McAllister), served as sales manager.

In early 2016, the defendant revised the pay plan for finance managers, such that they would receive as compensation 4.6 percent of the gross profits of the sales of back end products made by the entire sales department. Approximately one month later, on February 12, 2016, the plaintiff tendered her resignation because this constituted a "huge reduction in [her] pay plan."

On July 15, 2016, the plaintiff, along with two other female employees of the defendant, instituted an action in the United States District Court for the District of Connecticut (federal action), alleging that the defendant had "fail[ed] to pay [the] plaintiffs the same as male employees performing the same job, in violation

of the Equal Pay Act of 1963 [EPA], 29 U.S.C. § 206 et seq." On July 25, 2016, the plaintiff filed a complaint with the Commission on Human Rights and Opportunities (commission), "charg[ing] [the defendant] with gender discrimination and [having created a] hostile work environment . . . ." On April 21, 2017, the plaintiff received a release of jurisdiction letter from the commission, which authorized her to bring this action in the Superior Court. On July 18, 2017, the plaintiff commenced the present action, alleging that that she had been subjected to discrimination and a hostile work environment on the basis of her gender in violation of General Statutes § 46a-60 of the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq. On April 30, 2018, the District Court granted the defendant's motion for summary judgment and rendered judgment in favor of the defendant.

On November 19, 2018, the defendant filed a motion for summary judgment as to both counts of the plaintiff's complaint on the grounds that her claim of gender discrimination was barred by res judicata and that the conduct she complained of did not create a hostile work environment as a matter of law. On November 13, 2019, the court rendered summary judgment in favor of the defendant as to both counts. It is from this judgment that the plaintiff appeals. Additional facts and procedural history will be set forth as necessary.

"We set forth our well established standard of review on appeal following a trial court's granting of a motion for summary judgment. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law. As an appellate tribunal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A material fact is a fact which will make a difference in the result of the case. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Mariano* v. *Hartland Building & Restoration Co.*, 168 Conn. App. 768, 776–77, 148 A.3d 229 (2016).

I

The plaintiff first claims that the trial court erred in concluding that her gender discrimination claim was

barred by res judicata. Specifically, the plaintiff claims that res judicata does not apply because "there was a jurisdictional bar preventing [her] from bringing [the] claim before the federal court," and because her "[EPA] claims litigated in federal court are fundamentally different from her gender discrimination claim brought under [§ 46a-51 et seq.]." We are not persuaded.

"Res judicata, or claim preclusion, express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . . Res judicata bars the relitigation of claims actually made in [a] prior action as well as any claims that might have been made there. . . . Public policy supports the principle that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Wheeler* v. *Beechcroft, LLC*, 320 Conn. 146, 156–57, 129 A.3d 677 (2016). It is well established that "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding. . . . The [United States Supreme] Court intended this standard not only to clarify, but also to broaden, the scope of federal pendent jurisdiction. . . . According to [the United States Supreme Court], considerations of judicial economy, convenience and fairness to litigants support a wide-ranging power in the federal courts to decide state-law claims in cases that also present federal questions." (Citation omitted; internal quotation marks omitted.) *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 47, 694 A.2d 1246 (1997). Therefore, the first question before this court is whether there was a jurisdictional bar to the plaintiff's bringing her gender discrimination claim in the federal action.

According to the plaintiff, she "was obligated to litigate her EPA claim before her gender discrimination claim due to the statute of limitations [because] [t]he filing of the gender discrimination claim with the [commission] [did] not extend/toll the two year statute of limitations for filing an EPA lawsuit." Although the plaintiff is technically correct, there existed several opportunities that were available to her that she could have employed in order to bring her gender discrimination claim before the District Court. See generally V. Hooper, note, "Avoiding the Trap of *Res Judicata*: A Practitioner's Guide to Litigating Multiple Employment Discrimination Claims in the Third Circuit," 45 Vill. L. Rev. 743 (2000). Under one such option, the plaintiff could have filed her EPA claim in federal court and then sought a stay of that action until the conclusion of her proceeding before the commission. This option was viable because the United States Court of Appeals for the Second Circuit is "of the firm opinion that a

[D]istrict [C]ourt faced with a stay request in this type of situation . . . should grant the stay absent a compelling reason to the contrary." *Woods* v. *Dunlop Tire Corp.*, 972 F.2d 36, 41 (2d Cir. 1992), cert. denied, 506 U.S. 1053, 113 S. Ct. 977, 122 L. Ed. 2d 131 (1993). The plaintiff also could have filed her EPA claim in federal court and then amended that complaint to add her gender discrimination claim after the commission issued its release of jurisdiction letter. This option was also viable because the federal action was not disposed of until nine months after the plaintiff commenced the present action. Finally, the plaintiff could have first exhausted her administrative remedies before the commission, and then filed both her EPA and gender discrimination claims in federal court. Because these options were clearly available, and the plaintiff simply failed to take advantage of them, we conclude that she was not jurisdictionally barred from bringing her gender discrimination claim in the District Court.

Having reached this conclusion, we turn now to the facts underlying the plaintiff's claims to determine whether the trial court correctly concluded that the plaintiff's gender discrimination claim was barred by res judicata. "We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." (Citations omitted; internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 604, 922 A.2d 1073 (2007).

The operative complaint in the present case and the pleadings in the plaintiff's federal action contain virtually identical allegations regarding (1) the status of the plaintiff as a female citizen of Connecticut, (2) the defendant's status as a corporation operating a car dealership, Hartford Toyota Superstore, in Hartford, (3) the plaintiff's employment with the defendant, which began August 1, 2014, and (4) the plaintiff's satisfactory job performance. Moreover, both actions involve the same parties—Webster, McAllister, Mumtaz, and Clemons—and involve conduct that occurred during the same eighteen month period of time. Furthermore, a central

allegation in each action is that the defendant did not pay the plaintiff the equivalent of what it paid similarly situated male employees due to her gender. After considering these factors, we conclude that the combined facts of both actions constituted a single transaction that would have formed a convenient trial unit for the District Court and that their treatment as a unit would not have been unexpected by the parties. Accordingly, we conclude that the trial court properly found that no genuine issue of material fact existed as to whether the plaintiff had the opportunity to bring her gender discrimination claim before the District Court.

Because the plaintiff had the opportunity to bring her gender discrimination claim in the prior federal action, we next "apply the test set forth in . . . [1] Restatement (Second) of Judgments, § 25, comment (e) [1982]. Under [the relevant part of] this test . . . [i]f . . . the court in the first action . . . having jurisdiction, *would clearly have declined to exercise it as a matter of discretion* . . . then a second action in a competent court presenting the omitted theory or ground should [not be] precluded." (Emphasis in original; internal quotation marks omitted.) *Connecticut National Bank* v. *Rytman*, supra, 241 Conn. 44. Accordingly, for the plaintiff's gender discrimination claim to survive summary judgment on the ground of res judicata, she must show that the District Court would clearly have declined to exercise jurisdiction over it as a matter of discretion. The plaintiff has failed to make such a showing.

It is clear that federal courts routinely, and properly, exercise supplemental jurisdiction over state law claims of this nature when similar federal claims also have been alleged. See *Eng* v. *New York*, 715 Fed. Appx. 49, 54 (2d Cir. 2017) (holding that District Court did not abuse its discretion in exercising supplemental jurisdiction over plaintiff's state law discrimination claims because they arose out of same common nucleus of operative facts as her federal claims); *Treglia* v. *Manlius*, 313 F.3d 713, 723 (2d Cir. 2002) (holding that supplemental jurisdiction over plaintiff's state law discrimination claim was proper because it "[arose] out of approximately the same set of events as his federal retaliation claim"); see also *Considine* v. *Brookdale Senior Living, Inc.*, 124 F. Supp. 3d 83 (D. Conn. 2015); *Schlafer* v. *Wackenhut Corp.*, 837 F. Supp. 2d 20, 24 (D. Conn. 2011); *Osborn* v. *Home Depot U.S.A., Inc.*, 518 F. Supp. 2d 377, 388–89 (D. Conn. 2007). Because the plaintiff failed to present any evidence to even suggest that the District Court would have declined to exercise supplemental jurisdiction over her gender discrimination claim, we conclude that the trial court correctly determined that res judicata applies to this claim.

Having reached this conclusion, we finally address the plaintiff's assertion that res judicata should not

apply because her EPA and state law discrimination claims contain different legal elements. Although this is true, such differences do not affect the application of res judicata when, as here, the legal claims arise from the same transaction. "[W]hatever legal theory is advanced, when the factual predicate upon which claims are based [is] substantially identical, the claims are deemed to be duplicative for purposes of res judicata." *Berlitz Schools of Languages of America, Inc.* v. *Everest House*, 619 F.2d 211, 215 (2d Cir. 1980). Accordingly, we conclude, with regard to the plaintiff's gender discrimination claim, that the defendant was entitled to judgment as a matter of law under the doctrine of res judicata.[3]

## II

The plaintiff's second claim is that the court erred in granting the defendant's motion for summary judgment as to her hostile work environment claim because she submitted sufficient evidence to raise a genuine issue of material fact as to such a claim. We disagree.

"It is clear that . . . individuals reasonably should expect to be subject to [the] vicissitudes of employment, such as workplace gossip, rivalry, personality conflicts and the like. Thus, it is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace. . . . That is simply an unavoidable part of being employed. We recognize, however, that does not mean that persons in the workplace should expect to be subject to conduct that transgress[es] the bounds of socially tolerable behavior . . . ." (Citation omitted; internal quotation marks omitted.) *Perodeau* v. *Hartford*, 259 Conn. 729, 757, 792 A.2d 752 (2002). Accordingly, "[t]o establish a hostile work environment claim, a plaintiff must produce evidence sufficient to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . . [I]n order to be actionable . . . a sexually objectionable environment must be objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. . . . Whether an environment is objectively hostile is determined by looking at the record as a whole and at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (Internal quotation marks omitted.) *Feliciano* v. *Autozone, Inc.*, 316 Conn. 65, 85, 111 A.3d 453 (2015).

In *Feliciano*, our Supreme Court noted that, in the

context of a hostile work environment claim, summary judgment is appropriate when, "on the basis of all of [the] evidence, a reasonable juror could find that the defendant's workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment . . . ." (Internal quotation marks omitted.) Id., 89. Accordingly, in the present case, we must review "all of the evidence . . . in the light most favorable to the nonmoving party . . . [to conclude whether] the trial court improperly determined that the plaintiff had not established a genuine issue of material fact as to whether the defendant had subjected her to a hostile work environment on the basis of her sex." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 88–89.

The following additional facts, considered in the light most favorable to the plaintiff, are relevant to our resolution of this claim. The plaintiff claimed that, during her employment with the defendant, she was mistreated by four persons: Webster, McAllister, Mumtaz, and Clemons. This mistreatment may be summarized as follows.

Webster would sometimes yell at the plaintiff during managers' meetings. The plaintiff described these incidents as follows: "I have to physically show you, because it wasn't just yelling; it was verbally intimidating. . . . Webster stood like this, if I move a centimeter I could touch his nose, got into my face, while yelling, while spitting in my face . . . ." Webster's conduct was always related to issues in the workplace, but the plaintiff did not remember what exactly Webster said to her. On one occasion, the plaintiff walked out of a managers' meeting due to Webster's yelling. Later that day, Webster told the plaintiff that she did the right thing by leaving and that he should not have spoken to her that way. According to the plaintiff, this was Webster "trying to apologize the best he could . . . ." Webster also yelled at other employees, including Luis Plaza, whom he accused of doing "a terrible job with the used cars . . . ." The plaintiff believed that Webster did not like anybody in the workplace but that he particularly disliked her because she "would tell him to his face, no." The plaintiff's best characterization of how many incidents of this nature occurred was that, "[i]t was a few, more than once." The plaintiff also stated that Webster's conduct during these meetings did not indicate to her that he was unhappy with her work.

During her employment with the defendant, the plaintiff took a vacation. There was a discrepancy between the number of vacation days that the plaintiff requested and the return to work date that she provided on the vacation request form. Webster expected the plaintiff to return to work on the date listed on the form, whereas

the plaintiff believed that she did not have to return until the following day. As a result of this confusion, the plaintiff did not return to work on the date listed on the form. Webster told the plaintiff several times that she was "in big trouble . . . ." According to the plaintiff, she was "grounded" by Webster: "I lost my day off, I felt I was back in a totalitarian regime, I lost my early night. I was forced to work the next few Sundays as my punishment." Webster also yelled at Andrew Lombardi, another employee, about this issue, and ordered him to text the plaintiff. The plaintiff did not recall Webster saying anything further about this issue.

Because of her managerial position with the defendant, the plaintiff was given a dealer vehicle to drive. There was an occasion when damage was discovered on the vehicle, and Webster was convinced that the plaintiff had caused the damage. The plaintiff denied responsibility. This resulted in another yelling incident in front of other employees: "Webster was convinced that I had done it . . . and he was going to yell . . . at me over [it], and it was horrific, same crap. . . . [I]n his mind I had done it, and no matter what I said . . . [h]e didn't believe me. And then he said, next time I damage the vehicle that I would pay for it." The plaintiff could not recall exactly what he said, "but it was to the effect of, you damaged that car . . . [y]ou are going to pay for it." Ultimately, the plaintiff was not required to pay for the damage.

While the plaintiff was employed by the defendant, the dealership produced a Spanish language television commercial that included several Spanish speaking employees. The plaintiff, who speaks Spanish, was not included. This embarrassed the plaintiff.

On one occasion, McAllister yelled at the plaintiff: "He came to my office . . . [which] was all glass [so] everybody outside could see . . . . He got this close to me and yell[ed] at me, while spitting in my face, because it was that close." This incident lasted for a couple of minutes. The plaintiff could not recall why McAllister yelled at her but believed that it was because of a work related issue. McAllister did not use any inappropriate language while yelling at the plaintiff. There were no other incidents involving McAllister.

On one occasion, Mumtaz remarked to the plaintiff: "I'll have to get up and choke you." Mumtaz also used the word "biatch," a term he described as a "fancy way of saying a bitch" to describe women in the workplace. Additionally, Mumtaz constantly made comments in the plaintiff's presence to Lilia Browne, a female employee, regarding Browne's sex life.

Clemons was, according to the plaintiff, "very, very nasty, very short, [and] very sarcastic." Clemons would direct sarcastic and offensive comments at the plaintiff,

and would not "answer [her] in the right way." The plaintiff, however, cannot recall the specifics of any interactions she had with Clemons.

A number of incidents also occurred in the workplace that did not directly involve the plaintiff. The plaintiff described the first incident as follows: "Browne was in my office, and [Webster] came and he physically started pushing her out. He said, 'get this cockroach out of my office.' " The plaintiff described another incident as follows: "There was a Christmas party. They were all drinking and stuff. . . . [Webster] grabbed [Browne] by the waist, that kind of stuff." The plaintiff also observed Webster making "innuendos about [Browne's] breasts . . . ." The plaintiff also described an incident involving Webster and another female employee, Jill Bruno: "[Webster] walked up to [Bruno] and grabbed her butt cheeks . . . either coming into . . . or leaving [a] managers' meeting." The plaintiff did not recall when this incident occurred.

The plaintiff also recounted observations about the conduct of male employees in the workplace generally. According to the plaintiff, Webster made jokes in the workplace that were demeaning to female employees, made comments such as "woman driver[s]," and would ask to "talk to the husband" when interacting with women. Webster also, at times, used words such as "bitch," "whore," and "trashy" when discussing women with other employees. Webster, however, never directed any sexually explicit language at the plaintiff. At no time did the plaintiff make a complaint of harassment or bullying to the owner, Richard McAllister, or to the defendant's controller, Nancy Johnson.

After reviewing these facts, the court found: "[T]he plaintiff . . . fails to show that she was subjected to a hostile work environment based on gender. The plaintiff claims that her work environment was hostile because she was occasionally yelled at, other male employees used stereotypes and crude language when discussing females, and she witnessed another Hispanic female called a 'cockroach.' While this conduct is perhaps unprofessional and vulgar, it does not rise to the level of creating a hostile work environment. The yelling incidents that the plaintiff complains about were fairly infrequent, as she could only recall a few instances where she was yelled at during her employment with the defendant. . . . The stereotypes and crude language that the plaintiff witnessed others use also does not appear to be severe and pervasive enough to create a hostile work environment. . . . [T]he plaintiff failed to submit any evidence concerning the frequency and pervasiveness of such language, and could not specifically recall examples of any other colorful language that her manager used. . . . This language, while tasteless and crude, does not appear to have been pervasive or severe enough to alter the conditions of the plaintiff's

employment. . . .

"The foregoing is unlike the scenarios encountered in cases where the court has found the conduct complained about to rise to the level of harassment required to sustain a hostile work environment claim. . . . Instead, the incidents that the plaintiff complains about appear to have been isolated and sporadic, and they do not constitute a hostile work environment as a matter of law. . . . In light of the evidence before the court, along with the plaintiff's failure to submit any evidence describing how the alleged conduct impacted her work performance, the court cannot find that the plaintiff was subjected to a hostile work environment. Accordingly, the defendant is entitled to summary judgment on the plaintiff's hostile work environment claim." (Citations omitted.)

We agree with the analysis of the court. In order for the plaintiff's hostile work environment claim to survive summary judgment, she must establish the existence of a genuine issue of material fact as to whether, on the basis of her gender, the defendant subjected her to a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment . . . ." (Internal quotation marks omitted.) *Feliciano* v. *Autozone, Inc.*, supra, 316 Conn. 85. The plaintiff has failed to do so in two ways: she has not shown that the conduct at issue was sufficiently severe or pervasive, nor has she shown that it was based on her gender.

For purposes of summary judgment, the conduct at issue is deemed to have occurred during the eighteen month period when the plaintiff was employed by the defendant. The plaintiff, however, has failed to describe with any specificity the timing, duration, or frequency of these incidents. This omission is critical because it is well established that, for a hostile work environment claim to succeed, the conduct at issue must not be infrequent or isolated in time. This court has held that "two instances of inappropriate conduct within a one year span do not meet the high standard of severe and pervasive." *Heyward* v. *Judicial Dept.*, 178 Conn. App. 757, 765, 176 A.3d 1234 (2017). Additionally, in *Feliciano*, our Supreme Court discussed the facts of several cases in which it properly was found that a plaintiff's hostile work environment claim was not actionable: "*Quinn* v. *Green Tree Credit Corp.*, [159 F.3d 759, 768 (2d Cir. 1998)], involved only two isolated incidents. In *Bailey* v. *Synthes*, [295 F. Supp. 2d 344, 358 (S.D.N.Y. 2003)], the supervisor's actions were infrequent and isolated, were not physically threatening and occurred outside of the plaintiff's daily work routine. In *Lamar* v. *NYNEX Service Co.*, [891 F. Supp. 184, 185 (S.D.N.Y. 1995)], the plaintiff did not object to her supervisor's

behavior and that behavior was not directed specifically at the plaintiff. In *Babcock* v. *Frank*, [783 F. Supp. 800, 808–809 (S.D.N.Y. 1992)], the incidents were isolated and, in one instance, uncorroborated, and the employer responded promptly to all of the plaintiff's complaints." *Feliciano* v. *Autozone, Inc.*, supra, 316 Conn. 87–88.

The incidents and conduct discussed in the present case were, by the plaintiff's own admission, both sporadic and not pervasive; she was unable to describe with any specificity when the events occurred, either in time or in relation to one another. Additionally, the plaintiff never alleged, and the record does not suggest, that the conduct at issue ever altered the conditions of her employment. To the contrary, the plaintiff stated that the incidents involving Webster did not indicate to her that he was unhappy with her work. Furthermore, the conduct in the present case, as described by the plaintiff, was not severe enough to give rise to a hostile work environment claim. The only conduct that clearly was directed at the plaintiff was yelling, and, although yelling is surely conduct that workers consider unpleasant—and that we do not condone—there is nothing in the record to indicate that this yelling was ever "sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment . . . ." (Internal quotation marks omitted.) Id., 85. In fact, the plaintiff's own recollection supports the conclusion that this yelling was nothing more than one of the "vicissitudes of employment . . . [from which] individuals in the workplace reasonably should expect to experience some level of emotional distress . . . ." *Perodeau* v. *Hartford*, supra, 259 Conn. 757. Finally, there is nothing in the record to suggest that this yelling ever had anything to do with the plaintiff's gender; the plaintiff herself stated that it "was always related to issues in the workplace."

As for the comments and conduct directed at other female employees, there is again no evidence as to when these incidents occurred. There is also no evidence that the plaintiff ever took steps to report them. It should also be noted that, although these incidents were gender related, the plaintiff specifically stated that she was never the target of language or conduct of a sexual nature. Because the plaintiff has failed to show the existence of a genuine issue of material fact as to whether she was subjected to a hostile work environment, we conclude that the trial court correctly determined that the defendant was entitled to judgment as a matter of law on the plaintiff's hostile work environment claim.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Gloria Fernandez died during the pendency of this appeal. We thereafter granted the motion filed by her appellate counsel to substitute her daughter, Christina Gonzalez, the executor of her estate, as the plaintiff.

[2] "Back end" financial products include warranties, environmental protec-

tion packages, and tire and wheel packages.

[3] Having reached this conclusion, we find it unnecessary to consider the defendant's alternative ground for affirmance, which is that, even if the plaintiff's claim was not barred by res judicata, it failed on its merits because, as a matter of law, she did not suffer an adverse employment action and was not constructively discharged.

[4] We decline to address the defendant's alternative ground for affirmance, which is that the plaintiff's hostile work environment claim should be rejected on the ground of res judicata. This argument was not made before the trial court and was only briefly addressed in the defendant's appellate brief.

---