******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## CASSIE LONG *v.* TOWN OF PUTNAM
## (AC 46461)

Alvord, Cradle and Suarez, Js.*

*Syllabus*

The plaintiff appealed from the trial court's judgment granting the defendant town's motion for summary judgment on her complaint alleging, inter alia, pregnancy discrimination. She claimed that the court erred in its determination that there were no genuine issues of material fact as to her claims. *Held*:

The trial court improperly rendered summary judgment for the defendant on the plaintiff's claim of pregnancy discrimination, as the plaintiff presented sufficient evidence in opposition to the defendant's motion for summary judgment to create a genuine issue of material fact as to whether she suffered adverse employment actions when the defendant failed to reinstate her to her original job or an equivalent one and when it failed to promote her following her return from maternity leave, and a rational fact finder could conclude, on the basis of the evidence presented, including the timing and sequence of the alleged adverse employment actions, that the plaintiff presented evidence sufficient to establish a prima facie case of pregnancy discrimination and that the defendant's stated reasons for its actions were a pretext for its unlawful discrimination; accordingly, this court remanded the case for further proceedings on that claim.

This court declined to review the plaintiff's claim that the trial court erred in determining that there were no genuine issues of material fact that she was subjected to gender discrimination and in granting the defendant's motion for summary judgment with respect to that claim, as the claim was inadequately briefed.

Argued October 15, 2024—officially released November 11, 2025

*Procedural History*

Action to recover damages for, inter alia, alleged pregnancy discrimination, and for other relief, brought to the Superior Court in the judicial district of Windham, where the court, *Lohr, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*James V. Sabatini*, for the appellant (plaintiff).

*Proloy K. Das*, with whom, on the brief, was *Johanna G. Zelman*, for the appellee (defendant).

*Opinion*

SUAREZ, J. The plaintiff, Cassie Long, appeals from the summary judgment rendered by the trial court in favor of the defendant, the town of Putnam, on her complaint sounding in pregnancy and gender discrimination in violation of the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq. On appeal, the plaintiff claims that the court incorrectly determined that there were no genuine issues of material fact as to each of her claims. Because we agree that there are genuine issues of material fact as to the plaintiff's claim of pregnancy discrimination, we reverse the judgment of the court as to that claim. We decline to reach the merits of the plaintiff's claim that the court improperly rendered summary judgment on her gender discrimination claim as the claim was inadequately briefed. Accordingly, we affirm the judgment of the court with respect to her gender discrimination claim.

The record reveals the following facts, which we view in the light most favorable to the plaintiff, who was the nonmoving party on the motion for summary judgment; see, e.g., *Cole* v. *New Haven*, 337 Conn. 326, 329, 253 A.3d 476 (2020); and procedural history. The defendant is a Connecticut municipality and an employer within the meaning of the act. Connecticut municipalities are required to conduct an annual audit by an independent auditor. General Statutes § 7-392. Each municipality is required to designate and file the name of its auditor with the Office of Policy and Management (OPM) thirty days before the end of its fiscal year. General Statutes § 7-396. The independent auditor is then required to file an audit report with OPM "within six months from the end of the fiscal year . . . ." General Statutes § 7-393.

OPM may grant an extension to file the annual audit of no more than thirty days. General Statutes § 7-393. The defendant's fiscal year ends on the last day in June of each calendar year. The finance director is the defendant's employee responsible for the submission of the annual audits.

The defendant has a history of late audit submissions.[1] It also has a history of turnover in the finance director position. During the five years prior to the plaintiff's employment with the defendant, there were three different finance directors. In May, 2019, the defendant's finance director abruptly resigned. Thereafter, the defendant entered into a professional service agreement with the town of Killingly. Under the agreement, the town of Killingly would provide the defendant with financial consulting and assistance with its financial management, including the reconciliation of funds, preparation of records for the annual audit, evaluation of policies, and the implementation of policies and audit recommendations.

Given the history of high turnovers in its finance director position, the defendant decided in 2019 to hire an assistant finance director with the hope of promoting that person to finance director. The role of assistant finance director was a full-time position with a salary of $70,000. That person would become eligible for promotion to the position of finance director once he or she could demonstrate sufficient expertise to run the finance department (department) by submitting a couple of "clean audits." Norman Seney, the defendant's mayor, Jennifer Hawkins, the Killingly finance director, and Amanda Brown, the finance director for the town of Coventry, interviewed three candidates for the assistant

---

[1] The 2014 audit was not submitted to OPM until the end of February, 2015, the 2015 audit was not submitted until mid-March, 2016, the 2016 audit was not submitted until mid-March, 2017, and the 2017 audit was not submitted until the end of January, 2018.

finance director position. Seney invited Hawkins and Brown to assist in the interview process because they both held positions as finance directors. The plaintiff and Maureen Benway interviewed for the position. Seney wanted to hire Benway. Hawkins and Brown, however, recommended the plaintiff because she had more supervisory experience and a greater knowledge of the defendant's accounting software. On June 6, 2019, Seney offered the position of assistant finance director to the plaintiff on behalf of the defendant. After the plaintiff accepted the position but before she commenced work, the plaintiff learned that she was pregnant. On July 1, 2019, her first day of work, the plaintiff informed the defendant of her pregnancy.

At the time the plaintiff was hired, Seney knew that the department was a "mess." The plaintiff was aware of the department's problems and assured Seney that she could handle the job. As part of her duties as assistant finance director, the plaintiff was required to work with the auditors to complete the annual audit. She also was required to oversee the day-to-day operations of the department, which included supervising three staff members. In addition to her responsibilities as assistant finance director, the plaintiff oversaw the finances of the defendant's Water Pollution Control Authority (WPCA).[2]

When the plaintiff started as assistant finance director, the defendant had not yet hired an independent auditor for the 2019 fiscal year. At the recommendation of the plaintiff, the defendant retained a private consulting firm (auditors) to conduct its annual audit. When

[2] General Statutes § 22a-458, which governs the establishment of municipal water pollution control authorities, provides in relevant part that "the legislative body of any municipality ordered by the Commissioner of Energy and Environmental Protection . . . to abate or control water pollution shall establish a water pollution control authority and authorize the necessary funds to undertake and complete any action necessary to comply with such order." The WPCA is a separate entity within the defendant.

the defendant retained the auditors, it was aware that the auditors would not be able to come on site until January, 2020, to complete the audit because of their late engagement. The defendant knew that the auditors would not be able to complete the audit until after January, 2020. Seney told the plaintiff to have ready as much of the audit as she could for the independent auditors prior to her maternity leave.

On February 12, 2020, the plaintiff commenced her maternity leave. In March, 2020, while the plaintiff was on maternity leave, the defendant hired Benway as finance director to address the issues the defendant had with its audit. After the plaintiff returned from maternity leave in May, 2020, Benway was doing the work the plaintiff was doing previously, and Seney told the plaintiff that she needed to do anything Benway instructed her to do. Although the plaintiff's job title did not change, she was now performing the duties of an accounts receivable clerk. She was also reclassified as an hourly employee with a reduced work schedule, earning $15,000 less than before her maternity leave. The plaintiff felt as if she was being treated differently. Her work atmosphere became uncomfortable, and, despite asking multiple times, she was not given an explanation as to why the changes were made. According to the plaintiff, she was told on two occasions that, if she did not like the changes that were being made, she was "more than welcome to find a new job." On July 29, 2020, the plaintiff filed a complaint with the Commission on Human Rights and Opportunities (CHRO).

According to the plaintiff, there were never any concerns raised about her job performance until after she returned from maternity leave. Specifically, on November 2, 2020, the defendant issued a counseling memorandum[3] to the plaintiff, after the plaintiff filed the CHRO

---

[3] Benway testified that the counseling memorandum is a document that was intended to "help point out where [the plaintiff] went wrong, where

complaint, in which the defendant noted various concerns with the plaintiff's job performance. The memorandum stated, inter alia, that the plaintiff had "fail[ed] to properly deposit funds into the correct accounts and properly account for the deposits . . . ." On November 17, 2020, the plaintiff resigned from her position as assistant finance director. After the plaintiff resigned, the assistant finance director position remained vacant and was ultimately eliminated; the defendant then posted the plaintiff's former position as an accounts receivable clerk.

In June, 2021, the plaintiff commenced the present action in a two count complaint. The plaintiff asserted one count of pregnancy discrimination and one count of gender discrimination in violation of the act. With respect to her pregnancy discrimination claim, the plaintiff alleged that the defendant failed to reinstate her to the job she had prior to her maternity leave or to an equivalent position with equivalent pay, and that she was denied a promotion because of her pregnancy. With respect to her gender discrimination claim, the plaintiff alleged, inter alia, that the defendant discriminated against her for being a woman with a newborn and that the defendant denied her a promotion because of her gender. On August 4, 2021, the defendant filed an answer and special defenses to the plaintiff's complaint.

On September 15, 2022, the defendant filed a motion for summary judgment on both counts of the complaint, accompanied by a memorandum of law. Attached to its memorandum of law were various documents and deposition excerpts. In its motion for summary judgment, the defendant asserted that there were no disputed material facts and that it was entitled to judgment as a matter of law because the plaintiff could not establish a prima facie case of discrimination to support

the errors were, and to help her move forward to not keep doing the same errors, to learn from the mistakes."

either of her claims. Specifically, the defendant asserted that there was no genuine issue of material fact that the plaintiff was not qualified to be promoted to finance director and that the plaintiff did not suffer an adverse employment action because "(1) she did not apply for a promotion, (2) she was not demoted, and (3) [the] assignment of accounts receivable duties was not a material adverse change in her job responsibilities." It further asserted that "[t]here is no inference of discriminatory intent because: (1) . . . Benway was hired as the finance director of WPCA, not the town, and she is also female; (2) the work hours of everyone in the finance department were reduced at the same time as the plaintiff, and the decision was made to cut hours by . . . Seney, who also hired the plaintiff . . . and (3) . . . Benway, who is also female, assigned work to the plaintiff." Additionally, the defendant asserted that, assuming the plaintiff can establish a prima facie case of discrimination, it articulated a legitimate, nondiscriminatory reason for its actions and the plaintiff could not prove that its reasons are pretextual. The plaintiff objected to the defendant's motion, contending that there were genuine issues of material fact. Attached to her memorandum of law in opposition to the defendant's motion for summary judgment were various documents and deposition excerpts from the plaintiff, Seney, and Benway.

Immediately following an April 24, 2023 hearing, the court, *Lohr, J.*, issued an oral decision in which it granted the defendant's motion for summary judgment on both counts of the plaintiff's complaint.[4] The court

---

[4] Practice Book § 6-1 (a) provides in relevant part that "[t]he judicial authority shall state its decision either orally or in writing" when "making any . . . rulings that constitute a final judgment for purposes of appeal under General Statutes § 52-263, including those that do not terminate the proceedings. The judicial authority's decision shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by an official court reporter or court recording monitor and, if there is an appeal, the trial judge shall create a

noted that, "[w]ith regard to the . . . framework [under *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (*McDonnell Douglas*)], number one, and this is the same for both counts, the plaintiff must belong to a protected class. The court finds that she does . . . . In the case of pregnancy, she was pregnant, and in the case of gender, she is a woman. . . . Number two is that she meets the minimum qualifications for the job at issue. . . . She does meet the minimum qualifications for the job. . . . Number three, she must suffer an adverse employment action. There are two adverse employment actions that are indicated here . . . the so-called failure to reinstate and the so-called failure to promote. . . . [W]ith regard to prong three on the pregnancy discrimination claim, the failure to reinstate, and the failure to promote, the court finds that neither of those have been met on the prima facie case. That alone would be sufficient for the prima facie case to fail. But there is a fourth prong to the prima facie case and the burden shifting framework, and that there must be a basis from which to draw an inference of discriminatory intent, and the court does not find that there is such a basis to draw a discriminatory intent in this case. And, so, the plaintiff fails on the prima facie burden, but even assuming for the sake of argument that the plaintiff had been able to make out a prima facie case, [the] court further finds that the employer has put forth a reasonable response as to the actions it took . . . . With regard to the gender discrimination [claim] . . . the plaintiff has pled . . . what the plaintiff referred to as

memorandum of decision for use in the appeal by ordering a transcript of the portion of the proceeding in which it stated its oral decision. The transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office. . . ."

In the present case, the court ordered a transcript of its oral decision and signed the transcript. In this case, however, it may have been a better practice to issue a written decision.

a gender plus claim . . . . She must meet the minimum qualifications for the job at issue. The plaintiff, of course, did meet the minimum qualifications for her job . . . . She must suffer an adverse employment action. Again, we run into the same issue. . . . [T]here's insufficient [evidence] in the record to show . . . that the plaintiff suffered either of the two adverse employment actions that are stated here. . . . So, as to the gender discrimination claim, prong three, the adverse employment action, the court finds that there's insufficient evidence to show that the plaintiff suffered an adverse employment action here, but even assuming for the sake of argument that she did, four, the fourth prong of the prima facie case is that there must be a basis to draw an inference of discriminatory intent. And as I stated previously, I don't see the nexus. I don't see a basis for the drawing of an inference of discrimination on the basis of either gender or gender plus, meaning, as [the plaintiff's counsel] put it, 'gender plus an infant.' . . . The court notes that either sex or any gender can have an infant at home. There's just no connection that's here. But also, assuming for the sake of argument that the plaintiff was able to make out a prima facie case, all that would do is shift the burden to the defendant to put forth a nondiscriminatory basis for its actions. As previously stated, it has. . . . And so, the burden shifts back to the plaintiff, and the overall burden is not met on the plaintiff's part to show both pretexts, you know, both that the responses are untrue and that they are a pretext for discrimination. . . . And, based on this record, the court finds that here is insufficient basis to prove either. And, so, for . . . all of those reasons . . . the defendant's motion for summary judgment is granted, and the [plaintiff's] objection to the motion for summary judgment is overruled." This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by setting forth the applicable standard of review and the following legal principles. "The standards governing our review of a court's decision to grant a defendant's motion for summary judgment are well settled. Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle [it] to a judgment as a matter of law . . . and [only on such a showing] the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . .

"[I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Eldridge* v. *Hospital of Central Connecticut*, 230 Conn. App. 666, 670, 330 A.3d 604 (2025).

Under the act, employers may not discriminate against certain protected classes of individuals. See, e.g., *Desrosiers* v. *Diageo North America, Inc.*, 314 Conn. 773, 775, 105 A.3d 103 (2014). General Statutes

§ 46a-60 (b)[5] provides in relevant part: "It shall be a discriminatory practice . . . (1) [f]or an employer . . . to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . sex . . . [and] (7) [f]or an employer . . . [t]o terminate a woman's employment because of her pregnancy . . . to fail or refuse to reinstate the employee to her original job or to an equivalent position with equivalent pay and accumulated seniority, retirement, fringe benefits and other service credits upon her signifying her intent to return . . . to limit, segregate or classify the employee in a way that would deprive her of employment opportunities due to her pregnancy . . . [and] to discriminate against an employee or person seeking employment on the basis of her pregnancy in the terms or conditions of her employment . . . ." Connecticut courts "review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes." *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 415, 944 A.2d 925 (2008); see also *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, 156 Conn. App. 239, 249–50, 113 A.3d 463 (2015), aff'd, 322 Conn. 154, 140 A.3d 190 (2016).

"In order to establish a prima facie case of employment discrimination based on adverse employment action under the burden shifting analysis enumerated by the United States Supreme Court in *McDonnell Douglas* . . . and adopted by [our Supreme Court] in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990) . . . the complainant must prove that: (1) [s]he [was] in the protected

---

[5] Section 46a-60 has been amended since the commencement of this action. See, e.g., Public Acts 2021, No. 21-69, § 1. Those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) . . . the adverse action occurred under circumstances giving rise to an inference of discrimination. . . . The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." (Citations omitted; internal quotation marks omitted.) *Eldridge* v. *Hospital of Central Connecticut*, supra, 230 Conn. App. 671–72.

"The establishment of a prima facie case create[s] a rebuttable presumption of discriminatory intent. . . . The burden of establishing a prima facie case is a burden of production, not a burden of proof, and therefore involves no credibility assessment by the fact finder. . . . The level of proof required to establish a prima facie case is minimal and need not reach the level required to support a jury verdict in the plaintiff's favor." (Citations omitted.) *Craine* v. *Trinity College*, 259 Conn. 625, 638, 791 A.2d 518, (2002).

Before addressing the claim raised on appeal, we note that, in her appellate brief, the plaintiff argues that the *McDonnell Douglas* burden shifting analysis does not apply to her claim alleging an unlawful failure to reinstate her to her original job or to an equivalent position. She argues that the "defendant makes no argument that the denial [to reinstate her to her previous job or to an equivalent one] was due to a change in circumstances rendering reinstatement to her original position or equivalent position impossible or unreasonable." According to the plaintiff, "[t]his is the only available defense under § 46a-60 (b) (7) (B)." She further argues that "[p]retext is not relevant when there can be no legitimate factual dispute that [she] was denied

her statutory right to reinstatement to her original job or equivalent position upon return from maternity leave." The plaintiff, therefore, asserts that the only issue before the court was a legal one, that is, "whether the denial of reinstatement to her original job or equivalent position was lawful or not under § 46a-60 (b) (7) (B)."

In support of her argument, the plaintiff relies on *Gaither* v. *Stop & Shop Supermarkets Co.*, *LLC*, 84 F. Supp. 3d 113 (D. Conn. 2015). In *Gaither*, the plaintiff, who was pregnant, began to suffer from extreme back pain and her doctor restricted her from lifting objects weighing more than fifteen pounds. Id., 115. The defendant, nevertheless, would assign the plaintiff, on an almost daily basis, to tasks that required her to exceed her lifting restrictions. Id., 122. In the final month of her pregnancy, the plaintiff's pain became more severe, and she had to call out sick for several days. Id., 115. The plaintiff provided the defendant's manager with a doctor's note, to which the defendant's manager responded, "I don't care what you're going through, what type of pain, we have a business to run, and you have a job to do." (Internal quotation marks omitted.) Id. The plaintiff's employment was then terminated, and she was told that she was welcome to return to work, but she would have to reapply for her position and there was no guarantee that she would be rehired. Id., 115–16. After giving birth, the plaintiff did not reapply for a position with the defendant, as she did not feel that she was welcome to return. Id., 116.

The court in *Gaither* noted that the *McDonnell Douglas* framework does not apply when a plaintiff is able to produce direct evidence of discrimination. Id. The court further noted that "there [was] no factual dispute that [the] [p]laintiff was terminated because of her

[pregnancy related] medical restrictions and the primary question is a legal one: whether this termination was prohibited under [the act]." Id., 116–17.

In the present case, however, the plaintiff returned to work after her maternity leave, and the issue of whether the plaintiff was reinstated to her original job or to an equivalent position is vigorously disputed. But, even assuming that there is no factual dispute that the plaintiff was not reinstated to her original job or to an equivalent position, the question remains whether that adverse employment action occurred under circumstances giving rise to an inference of discrimination. The *McDonnell Douglas* "methodology is intended to provide guidance to fact finders who are faced with the difficult task of determining intent in complicated discrimination cases." *Craine* v. *Trinity College*, supra, 259 Conn. 637. Under these circumstances, therefore, the court properly employed the *McDonnell Douglas* methodology. Accordingly, we review the court's judgment under the *McDonnell Douglas* framework.

I

On appeal, the plaintiff first claims that the court improperly rendered summary judgment on her pregnancy discrimination claim because there are genuine issues of material fact as to whether the defendant discriminated against her by failing to promote her to the position of finance director and by failing to reinstate her to the job she had prior to her maternity leave or to an equivalent position with equivalent pay.[6]

---

[6] The plaintiff's brief is not a model of clarity. We note that, in the introduction to her brief, the plaintiff characterizes her claims as follows: "The trial court erred in granting the defendant's motion for summary judgment for three principal reasons. One, the trial court decided the facts as opposed to finding the existence of genuine issues of material fact. Two, the trial court ignored the statutory language of . . . § 46a-60 (b) (7) . . . . Three, the trial court improperly relied upon the same actor inference." We have reframed the claims in this appeal to more accurately reflect the arguments set forth in the body of her brief. See, e.g., *Doe* v. *Quinnipiac University*, 218 Conn. App. 170, 173 n.4, 291 A.3d 153 (2023).

Specifically, the plaintiff argues that she provided evidence sufficient to establish that a genuine issue of material fact existed as to whether she had proven a prima facie case of employment discrimination on the basis of her pregnancy and that the defendant's stated reasons for its actions were pretextual. We agree.

In the present case, it is undisputed that the plaintiff is a member of a protected class and that she is qualified for the position of assistant finance director. Accordingly, only the third and fourth prongs of the prima facie case for an employment discrimination claim based on pregnancy are at issue in this appeal, that is, whether the plaintiff submitted evidence sufficient to establish that she suffered an adverse employment action and whether that action occurred under circumstances giving rise to an inference of discrimination.

A

Employing the *McDonnell Douglas* framework, we first consider whether the plaintiff made out a prima facie case of pregnancy discrimination. In her complaint, the plaintiff alleged that she suffered an adverse employment action when the defendant failed to reinstate her to her original position or to an equivalent one after she returned from maternity leave and when the defendant failed to promote her to the position of finance director. On appeal, the plaintiff claims that, although her official job title did not change, she did not, in practice, return to the role of assistant finance director and, instead, she effectively was demoted to the role of an accounts receivable clerk. She further argues that she was improperly denied a promotion to the position of finance director as a result of pregnancy discrimination. The defendant counters that the plaintiff did not suffer an adverse employment action because she returned after her maternity leave to the

same position at the same rate of pay[7] and that the plaintiff was not qualified for the promotion to the position of finance director that she claims she was denied.

"A plaintiff sustains an adverse employment action if . . . she endures a materially adverse change in the terms and conditions of employment. . . . To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. . . . [A]n adverse employment action [has been defined] as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." (Internal quotation marks omitted.) *Heyward* v. *Judicial Dept.*, 178 Conn. App. 757, 767–68, 176 A.3d 1234 (2017); see also, e.g., *Shultz* v. *Congregation Shearith Israel*, 867 F.3d 298, 304 (2d Cir. 2017) ("[a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation" (internal quotation marks omitted)). "[W]hether an undesirable employment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination." *Hoyt* v. *Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006).

For a discrimination claim to be premised on a failure to promote, a plaintiff is generally required "to allege

---

[7] In its memorandum in support of its motion for summary judgment, the defendant asserts that the plaintiff admitted in her deposition testimony to having the same job title and the same rate of pay upon her return from maternity leave. In her appellate brief, the plaintiff maintains that this purported admission was "simply false." We agree. The record reflects that the plaintiff testified that, when she returned from maternity leave, she had the same title, but her role had effectively changed, and that she was notified that her work hours were to be reduced effective July 1, 2020.

that she or he applied for a specific position or positions and was rejected therefrom . . . ." *Brown* v. *Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998). The plaintiff is not required to apply for a position, however, if "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." (Internal quotation marks omitted.) *Dawson* v. *New York City Transit Authority*, 624 Fed. Appx. 763, 769–70 (2d Cir. 2015).

In the present case, as to her failure to reinstate argument, the plaintiff alleged in her complaint that, "[s]ince returning from maternity leave, the defendant had demoted [her] to the position of accounts receivable clerk, and cut eight hours of her work week resulting in a $15,000 per year decrease in pay." In her opposition to the defendant's motion for summary judgment, the plaintiff submitted an affidavit in which she averred that, "[s]ince returning from maternity leave, the defendant demoted me to the position of accounts receivable clerk, and cut eight hours of my work week resulting in a $15,000 per year decrease in pay." The plaintiff also submitted portions of her deposition transcript in which she testified that, when she returned to work in May, 2020, she was informed that her work schedule would be reduced by eight hours per week and her rate of pay would be calculated on an hourly basis. She further testified that, before she left on maternity leave, "I was doing [the] audit, I was doing the budget, I was doing time cards." According to the plaintiff, she was doing "[e]ssentially, everything [Benway] was doing . . . ." She testified that "I was in all our department head meetings, I provided the department report, I was a salaried employee where I didn't have to punch in. When I returned, I was given a badge that had a bar code on it, and I then had to

punch in." Additionally, the plaintiff testified that, when she came back, she "was doing what [Benway] was giving me to do." She further testified that, upon her return from maternity leave, she did not have access to the defendant's bank accounts and that she was no longer privy to certain information. She was no longer "invited in for the bond dates for municipal complex, [she] wasn't allowed to talk to the auditors, unless [she] was asked to talk to the auditors. [She] wasn't allowed to be in on the budget." We conclude that this evidence was sufficient to create a genuine issue of material fact that the plaintiff was not reinstated to her original position.

With respect to her failure to promote assertion, the plaintiff alleged that she suffered an adverse employment action because she was denied a promotion on the basis of her pregnancy. Specifically, she alleged that, "[w]ithin about eight . . . days after starting her maternity leave, the defendant hired someone else [Benway] for the finance director/treasurer position." In its motion for summary judgment, the defendant asserted that the plaintiff did not apply for a promotion to the position of finance director and that she was not qualified for the position. The defendant also argued that any promotion discussed with the plaintiff was "contingent on her successfully completing the audit and performing well otherwise, which she did not do."

The plaintiff submitted in her opposition to the defendant's motion for summary judgment portions of her deposition transcript in which she testified that she was told during her interview that the assistant finance director position was "temporary" and that she was "going to be transferred into the finance director [position]." The plaintiff further testified that she was never told the audit needed to be completed in its entirety. Rather, she stated that she was told to "get as much of the audit done as possible," and, in her affidavit she

averred that the defendant was aware that the audit was likely not going to be completed on time due to the late hiring of the plaintiff and the defendant's late retaining of the auditors. Moreover, she testified that she would periodically meet with Seney and that she would attend "department head meetings once a month, and he would constantly praise how great I was doing, how well the year is turning around, how much progress we're making." According to the plaintiff, there were never any concerns raised about her job performance. It was not until November 2, 2020, that the defendant issued a counseling memorandum to the plaintiff. The counseling memorandum was issued at the direction of the defendant's administrator after the plaintiff filed a complaint with the CHRO.

In her affidavit in opposition to the defendant's motion for summary judgment, the plaintiff averred that Seney told her that she "would be promoted to finance director/treasurer after one . . . year of employment." She further averred that Seney publicly commented at the time of her hiring that, "[w]ith the help of the Killingly treasurer . . . [who] is bringing her up to speed in regards to our programs and everything else and we hope that within the next six months to a year we can [p]ut her into the position of finance director once she obtains all the training." (Internal quotation marks omitted.) Additionally, she averred that, on or about December 10, 2019, she participated in a meeting with Seney . . . and Hawkins, during which "[i]t was agreed by all attending [the] meeting including Seney that due [to the plaintiff] starting the job after the fiscal year ended and the state of the [defendant's] books (poor) that [she] was not to be held responsible for the outcome of the audit." She further averred that Seney told her that the defendant could not have left the department understaffed for three months, that he looked for a

consultant but could not find any and that he did what was best for the defendant.

The plaintiff also submitted portions of Seney's deposition transcript in her opposition to the defendant's motion for summary judgment. In his deposition, Seney testified that the employee in the assistant finance director position was eligible for promotion to the finance director position. According to Seney, an assistant finance director would become eligible for the finance director position if they submitted clean audits. Seney testified that, "basically, that was the key, to get a couple clean audits going forward that would prove to us that that individual would have the expertise to run the department the way it should be and to be able to have clean audits without any deficits, deficiencies." Although Seney preferred Benway over the plaintiff, Seney agreed to hire the plaintiff on the advice of Hawkins and Brown. According to Seney, the recommendation to hire the plaintiff was based on her having experience overseeing other employees and because the plaintiff was younger. Seney stated that "younger people are known to be much better with computers." Seney also testified that the necessary qualifications for the assistant finance director position were the same as the treasury and/or finance director position.[8] Ultimately, Seney admitted that the plaintiff was a "great candidate" and that is why the defendant hired her.

Although Seney testified that he told the plaintiff that she needed to complete the audit by December 15, 2019, the record reflects that he and the defendant were aware that the audit could not be completed until after January, 2020, because the auditors were retained late. Seney testified that, when the plaintiff was on maternity leave, he tried to reach out to consultants to work on

---

[8] Seney testified during his deposition that the defendant changed the job title of treasury director to finance director.

the audit and could not find any, so he decided to hire Benway as the finance director to address the issues the defendant had with its audit. Moreover, despite Seney's testimony that a candidate for the finance director position would have to demonstrate that he or she had the expertise to run the department by having completed clean audits, it is undisputed that Benway never submitted a clean audit on behalf of the defendant prior to being hired as the defendant's finance director. Accordingly, on the basis of our review of the record, we conclude that the plaintiff established a genuine issue of material fact that she was qualified for promotion to the position of finance director. See, e.g., *Kovaco* v. *Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) ("[i]n opposing a defendant's motion for summary judgment, a plaintiff may satisfy this burden by showing that she possesses the basic skills necessary for performance of the job" (internal quotation marks omitted)); *Ellis* v. *Century 21 Dept. Stores*, 975 F. Supp. 2d 244, 270 (E.D.N.Y. 2013) (denying defendant's motion for summary judgment when plaintiff met "minimal" burden to demonstrate that she was qualified for promotion).

Therefore, on the basis of the evidence submitted in opposition to the defendant's motion for summary judgment, if believed, a trier of fact reasonably could find that the plaintiff suffered adverse employment actions when the defendant failed to reinstate her to her original job or an equivalent one and when it failed to promote her to the position of finance director after she returned from maternity leave.

B

We next consider whether the plaintiff has submitted evidence sufficient to establish a genuine issue of material fact that the adverse employment actions occurred

under circumstances giving rise to an inference of discrimination. The court "must be alert to the fact that [e]mployers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law. . . . Because an employer who discriminates is unlikely to leave a smoking gun attesting to a discriminatory intent, a victim of discrimination is seldom able to prove [her] claim by direct evidence, and is usually constrained to rely on circumstantial evidence. . . .

"Circumstances contributing to a permissible inference of discriminatory intent may include the employer's continuing . . . to seek applicants from persons of the plaintiff's qualification to fill that position . . . or the employer's criticism of the plaintiff's performance in . . . degrading terms . . . or its invidious comments about others in the employee's protected group . . . or the more favorable treatment of employees not in the protected group . . . *or the sequence of events leading to the plaintiff's discharge . . . or the timing of the discharge.* . . . The burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion at the prima facie stage is de minim[i]s. . . . Since the court, in deciding a motion for summary judgment, is not to resolve issues of fact, its determination of whether the circumstances giv[e] rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. It is not the province of the summary judgment court itself to decide what inferences should be drawn." (Citations omitted; emphasis added; internal quotation marks omitted.) *Chambers* v. *TRM Copy Centers Corp.*, 43 F.3d 29, 37–38 (2d Cir. 1994).

In the present case, the plaintiff primarily relies on the sequence and the timing of the events that occurred shortly after she began maternity leave to establish that the adverse employment actions occurred under circumstances giving rise to an inference of discrimination. Specifically, the plaintiff argues that, shortly after commencing her maternity leave, the defendant denied her a promotion by hiring Benway as finance director and, after the plaintiff's return from maternity leave, her duties were fundamentally changed to effectively that of an accounts receivable clerk. The defendant contends that the plaintiff's evidence was insufficient to give rise to an inference of discrimination. The defendant maintains that the plaintiff's argument "largely centers on her claim that she was not returned to the same job. But, as already established, that is plainly false. She returned in May, 2020, to the exact same position, with the exact same hours, that she left in February, 2020. She worked nearly two months, before her hours were then reduced." It further maintains that Seney cut the "hours of all employees . . . ."

The evidence submitted in opposition to the defendant's motion for summary judgment, however, suggests otherwise. Specifically, the evidence reveals that Benway was hired as finance director in March, 2020, shortly after the plaintiff went on maternity leave on February 12, 2020. When the plaintiff returned from maternity leave in May, 2020, she was notified that her hours would be reduced effective July 1, 2020. As stated previously, when the plaintiff did return from maternity leave, she testified that she "literally had nothing to do," and that, although her official title technically had not changed, her job functions, in practice, became that of an accounts receivable clerk, essentially a demotion. See, e.g., *Lorenzo* v. *St. Luke's-Roosevelt Hospital Center*, 837 F. Supp. 2d 53, 69 (E.D.N.Y. 2011) (concluding that plaintiff established prima facie case that she was

demoted when evidence showed that, "[a]lthough not styled a demotion, the combined effect of . . . changes [to the plaintiff's employment] could support a finding of a materially adverse employment action"); *Pizzo* v. *HSBC USA, Inc.*, Docket No. 04-CV-114A (RJA), 2007 WL 2245903, *9–10 (W.D.N.Y. August 1, 2007) (concluding that whether new position was demotion or substantially equivalent employment opportunity was disputed issue of fact for jury to resolve, noting that "determining equivalency of job position is usually a question of fact").

Moreover, the plaintiff's bank access, which she needed in order to work with the auditors, was taken away, and Benway had to pull the appropriate bank statements. She also averred in her affidavit that she was no longer allowed to attend monthly department head meetings, which she had done prior to her maternity leave. She testified that, before she left on maternity leave, "I was doing [the] audit, I was doing the budget, I was doing time cards." According to the plaintiff, she had been doing "[e]ssentially, everything [Benway] was doing . . . ." When she returned, however, she "was doing what [Benway] was giving [her] to do." She was no longer "invited in for the bond dates for municipal complex, [she] wasn't allowed to talk to the auditors, unless [she] was asked to talk to the auditors. [She] wasn't allowed to be in on the budget." Finally, the plaintiff also testified that, prior to her maternity leave, she was a salaried employee earning $70,000 per year. After her return from maternity leave, she was an hourly employee, earning less pay.

In short, the plaintiff's evidence submitted in opposition to the defendant's motion for summary judgment was that her duties and position were fundamentally altered after her return from maternity leave. The plaintiff submitted evidence sufficient to demonstrate a genuine issue of material fact that, shortly after she began

her maternity leave, Benway was hired for the position of finance director and began to perform the same duties that the plaintiff had been, at a higher rate of pay than the plaintiff had been receiving before she began maternity leave. At the same time, the plaintiff also presented evidence that her job duties functionally had been changed to those duties of a lower position than the job she had held before her maternity leave. As previously stated, the plaintiff testified that she was told that she was doing well prior to her maternity leave. Although the plaintiff's primary duty was to complete the audit and she was told to complete as much of the audit as she could prior to her maternity leave, it was not completed, at least in part, due to the defendant's late retention of the auditors. No more than one month after the plaintiff went on maternity leave, Benway was hired to complete the audit and assume the plaintiff's duties, effectively replacing her. Therefore, in light of the conflicting evidence presented, a reasonable fact finder could infer that it was as a result of her pregnancy.

On the basis of the proffered evidence, including the timing and sequence of the alleged adverse employment actions, a rational fact finder could conclude that the plaintiff suffered adverse employment actions under circumstances giving rise to an inference of discrimination. See, e.g., *Gorman-Bakos* v. *Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001) ("a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action" (internal quotation marks omitted)). We therefore conclude that the plaintiff presented evidence sufficient to establish a prima facie case of pregnancy discrimination.

C

"Under the *McDonnell Douglas* . . . [burden shifting] analysis, establishing a prima facie case of discrimination creates a presumption that the defendant acted illegally. . . . To establish a presumption is to say that a finding of . . . [the prima facie case] produces a required conclusion in the absence of explanation . . . . To rebut this presumption, the defendant must only articulate a legitimate, nondiscriminatory reason for [its actions]. . . . This, too, is a burden of production, and the defendant merely needs to state a nondiscriminatory reason. The defendant does not have to prove the absence of discrimination." (Citations omitted; internal quotation marks omitted.) *Craine* v. *Trinity College*, supra, 259 Conn. 643.

The defendant asserts that it articulated legitimate nondiscriminatory reasons for its actions. Specifically, the defendant first maintains that the plaintiff was hired to submit the annual audit timely and properly, and that the timely submission of a clean audit was a prerequisite for any future promotion. Second, the defendant argues that financial motivations are legitimate business reasons for an adverse employment action and that the reduction in the plaintiff's work hours were a legitimate reason to meet a $45,000 deficiency in the department's budget. Lastly, it maintains that there was a vacancy in the accounts receivable position of the department and that Benway properly asked the plaintiff to perform those duties.

D

Having proffered its reasons for its actions, we now consider under the *McDonnell Douglas* framework whether the plaintiff introduced evidence sufficient to raise a genuine issue of material fact as to whether the defendant's stated reasons were a pretext for unlawful discrimination.

"To prove pretext, the plaintiff may show by a preponderance of the evidence that [the defendant's] reason is not worthy of belief or that more likely than not it is not a true reason or the only true reason for [the defendant's] decision to [terminate the plaintiff's employment] . . . . Of course, to defeat summary judgment . . . the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors. . . . A plaintiff may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable [fact finder] could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." (Citation omitted; internal quotation marks omitted.) *Eldridge* v. *Hospital of Central Connecticut*, supra, 230 Conn. App. 672.

In the present case, the plaintiff argues that a reasonable fact finder could conclude that the defendant's stated reasons were a pretext for its alleged adverse employment actions. The defendant maintains that there is "copious, undisputed evidence to support [its] contention," and, therefore, it has satisfied its burden of production under the *McDonnell Douglas* framework. The evidence, however, viewed in the light most favorable to the plaintiff, reflects that there are inconsistencies and disputes as to the defendant's proffered legitimate reasons for its actions, which a reasonable fact finder rationally could believe and, hence, infer that the defendant did not act for nondiscriminatory reasons.

First, the defendant maintains that unsatisfactory job performance is a legitimate nondiscriminatory reason for not promoting the plaintiff and that, because the

plaintiff did not complete the audit, Seney resorted to other measures, "namely filling the WPCA finance director vacancy by hiring . . . Benway." The evidence in the record shows, however, that the defendant's department was a "mess" for years. Because of the department's deficiencies, the defendant decided to hire an assistant director with the expectation of promoting that individual to the position of finance director. Among the three candidates that were interviewed for the finance director position were the plaintiff and Benway. Seney preferred Benway, but because of her managerial and computer skills, the defendant hired the plaintiff. When the plaintiff commenced work, the defendant was already behind schedule with its annual audit. It had yet to hire the required auditors, and, because of that late hiring, the auditors could not perform the audit until after the deadline. Moreover, prior to her maternity leave, the plaintiff was performing well. She was told to complete as much of the audit as she could before her maternity leave. In March, 2020, the defendant hired Benway as the defendant's finance director at an annual salary of $75,000.

The defendant maintains that Benway was hired to replace a vacancy in its WPCA department; however, Seney testified that Benway was the defendant's finance director. He also testified that Benway was the plaintiff's boss. Although Seney testified that the timely submission of a clean audit was a prerequisite for any future promotion to finance director, it is undisputed that Benway, Seney's preferred candidate, was hired as the defendant's finance director without fulfilling this requirement. Notably, despite the defendant hiring Benway to complete the audit, the record reflects that the audit remained incomplete even after the plaintiff returned from her maternity leave.

Second, the defendant maintains that the department had a deficiency of $45,000 in its budget and the plaintiff's hours were reduced to make up for that shortfall.

It argues that financial motivations are also legitimate business reasons for an employment action. Although the hours of the part-time employees of the department decreased, there was evidence that Benway's salary as the finance director was $75,000, $5000 more than the plaintiff's salary before she left for maternity leave, and that Benway was given more paid time off than the plaintiff had been given.

Lastly, the defendant maintains that there was a retirement in its department, leaving the accounts receivable position vacant and, therefore, Benway was within her right to ask the plaintiff to complete those essential duties. The record clearly reflects, however, that the retirement in the department that created the vacancy in the accounts receivable position did not occur until June, 2020. The record further reflects that Benway was performing all of the plaintiff's duties when the plaintiff returned to work from maternity leave on May 11, 2020.

On the basis of this evidence, if believed, a jury reasonably could conclude that the defendant's stated reasons for its actions were a pretext for its failure to reinstate the plaintiff to her former position or an equivalent one and for its failure to promote her to finance director. Accordingly, we conclude that the court improperly rendered summary judgment in favor of the defendant on count one.

## II

The plaintiff next claims that the court incorrectly determined that there were no genuine issues of material fact that she was subjected to gender discrimination. Specifically, the plaintiff argues that she was "denied [a] promotion to the finance director position because of gender discrimination." We decline to review this claim because it has been inadequately briefed.

The plaintiff's brief to this court merely states that "[t]he hiring of Benway is not legally dispositive. While female, Benway did not have a newborn at home at the time of hire [and] [g]ender plus familial status can also support a 'sex plus' claim under Title VII." In support of this claim, the plaintiff cites, without substantial analysis, to three federal cases: *Back* v. *Hastings on Hudson Union Free School District*, 365 F.3d 107, 113 (2d Cir. 2004); *Towers* v. *State University of New York at Stony Brook*, Docket No. CV-04-5243 (FB) (RML), 2007 WL 1470152, *1 (E.D.N.Y. May 21, 2007); and *Trezza* v. *Hartford, Inc.*, Docket No. 98 CIV. 2205 (MBM), 1998 WL 912101, *7 (S.D.N.Y. December 30, 1998). The plaintiff's brief, however, is devoid of any discussion of the elements of her gender discrimination claim, the law governing such a claim, or the court's analysis of the claim.

We have repeatedly stated that "[w]e are not required to review issues that have been improperly presented to this court though an inadequate brief . . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs . . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.) *Stubbs* v. *ICare Management, LLC*, 198 Conn. App. 511, 529, 233 A.3d 1170 (2020). Accordingly, we decline to review this claim.

The judgment is reversed only with respect to count one of the complaint and the case is remanded for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.